**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| ILYA YAKOBOWICH, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | Case No. 1:26-cv-00200-SEP |
| | ) | |
| SHERIFF GARY STOLZER, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Before the Court is Petitioner Ilya Yakobowich's Petition for Writ of Habeas Corpus Under § 2241, Doc. [1], which is fully briefed and ready for disposition, *see* Docs. [10], [13]. Because the parties do not dispute facts, no hearing is necessary. For the reasons set forth below, the Petition is denied.

**FACTS & BACKGROUND**

Petitioner Ilya Yakobowich, a citizen of Israel, most recently entered the United States under the Visa Waiver Program on May 10, 2025, at or near Fort Lauderdale, Florida. Doc. [1-2] at 4, 25. Petitioner's authorization to stay in the United States expired on August 7, 2025, and Petitioner violated his status by remaining beyond the 90-day period accorded to him upon entry. *Id.*; Doc. [13] at 1. On April 21, 2026, after a routine traffic stop, Petitioner was taken into custody when law enforcement found that he had an outstanding warrant for failure to appear in county court to answer a charge of home repair fraud. Doc. [1] ¶ 13. That charge was later dismissed, leaving Petitioner with no criminal convictions. *Id.* ¶ 14. After the dismissal, on April 27, 2026, Petitioner was transferred into federal custody. *Id.*; Doc. [1-2] at 53-66.

On April 28, 2026, Petitioner was served with a Notice of Intent to Issue a Final Administrative Removal Order, in which DHS alleged that Petitioner had remained in the United States without authorization after his 90-day authorization as a nonimmigrant expired. Doc. [1-2] at 144. The same day, Petitioner acknowledged receipt of the Notice of Intent but contested the charges on the basis that he "legally married on November 2025 and the Documents are in process." *Id.* at 145. Nevertheless, on May 3, 2026, DHS executed a Final Administrative Removal Order under 8 U.S.C. § 1227(a)(1)(B), commanding "any DHS Office with authority to

enforce United States immigration law to take [Petitioner] into custody and remove [him] from the United States." *Id.* at 25.[1]

On August 11, 2026, Petitioner submitted an Application for Asylum and for Withholding of Removal, which prevents execution of his removal order while the application remains pending. *Id.* at 4-16; Doc. [13] at 9. According to Petitioner, his spouse has also filed a form I-130 Petition for Alien Relative (seeking adjustment of status based on his marriage to a U.S. citizen) on Petitioner's behalf, and Petitioner has filed a Form I-485 Application to Register Permanent Residence or Adjust Status. Doc. [1] ¶ 14; Doc. [13] at 28. Per Petitioner's immigration counsel, the asylum application, the I-130 petition, and the Form I-485 application all remained pending as of July 28, 2026 (roughly three weeks before filing of the Petition). Doc. [10] at 2; Doc. [13] at 28.

On August 20, 2026, Petitioner filed the Petition, arguing that his detention is not mandated by 8 U.S.C. § 1231, and that his continued detention without parole since April 27, 2026, violates due process because "the Government identifies no date by which removal could occur." Doc. [13] at 3. Petitioner does not contest the removal order or seek relief from removal. *Id.* He challenges his physical confinement while DHS processes his asylum application. *Id.* He argues that the Visa Waiver Program does not authorize detention "of uncertain duration without an individualized justification" *id.*, and asks this Court to either order his immediate release or require an individualized bond hearing before an immigration judge at which the Government bears the burden of justifying his continued detention. Doc. [1] at 5.

## LEGAL STANDARD

Federal courts have jurisdiction to hear habeas cases under 28 U.S.C. § 2241, which authorizes any person to claim in federal court that he or she is being held "in custody in violation of the Constitution or laws . . . of the United States." *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Habeas remains the basic method for obtaining review of continued custody after a deportation order becomes final. *Id.* (citing *Cheng Fan Kwok v. INS*, 392 U.S. 206, 212, 215–216, (1968)). A habeas petitioner "bears the burden of demonstrating by a preponderance of the evidence that his or her detention is unlawful." *Lugo-Solet v. Mullin*, 2026 WL 1162233, at *1

[1] Petitioner "does not concede" that his order of removal became final on May 3, 2026, Doc. [13] at 4, but he does not contest the validity of the order of removal or its alleged execution date, and so the Court accepts those allegations as true. *See* 28 U.S.C. § 2248.

(E.D. Mo. Apr. 29, 2026) (citing *Vargas Lopez v. Trump*, 802 F. Supp. 3d 1132, 1137 (D. Neb. 2025)).

## DISCUSSION

In Petitioner's own words, he "challenges only his physical confinement while DHS is legally unable to execute the [removal] order because his asylum application remains pending." Doc. [13] at 3. Petitioner does not dispute that the statute pursuant to which he is detained, 8 U.S.C. § 1231(a), authorizes the Government to detain him beyond the removal period. He contests the Government's claim that his post-removal-period is "mandatory,"[2] but he does not argue that the Government lacks discretion to detain individuals in his situation after their removal period. *See id.* at 5 ("Because the removal period has expired, any current custody authority arises, if at all, under § 1231(a)(6). That provision is discretionary, not mandatory."). Rather, his argument seems to be that the Government is not allowed to exercise its discretion to keep him detained without justifying that detention in an individualized bond hearing. *See id.* at 8 ("Where the statute permits release, categorical detention without any individualized inquiry is excessive unless DHS can show that custody is necessary in the particular case."). Because that argument is foreclosed by *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001), the Petition fails.

### I. <u>Petitioner has no statutory right to a bond hearing.</u>

In 1996, Congress passed and President Clinton signed the Illegal Immigration Reform and Immigrant Responsibility Act, which mandates the removal of a noncitizen within 90 days of a final order of removal. 8 U.S.C. § 1231(a)(1)(A). By statute, the 90-day removal period begins on the latest of the following:

(i) The date the order of removal becomes administratively final.

---

[2] The Government repeatedly states that Petitioner is subject to "mandatory" detention pursuant to 8 U.S.C. § 1231(a)(2). *See, e.g.*, Doc. [10] at 3, 4, 6, 7, 10, 13. Section 1231(a)(2) does plainly mandate detention during the 90-day removal period. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021). But that period had elapsed before Petitioner filed the Petition. Section 1231(a)(6) provides that an alien "*may* be detained beyond the removal period" under certain circumstances. 8 U.S.C. § 1231(a)(6) (emphasis added). The Supreme Court has held that the phrase "may be detained" is "ambiguous" and "implies discretion." *Jennings v. Rodriguez*, 583 U.S. 281, 283, 300 (2018); *see also Johnson v. Arteaga-Martinez*, 596 U.S. 573, 582 (2022) ("The parties do not dispute that the Government possesses discretion to provide bond hearings under § 1231(a)(6) . . . ."). Because Petitioner has not shown that he is entitled to the requested relief even if post-removal-period detention is discretionary, the Court takes no position on the Government's stronger claim that Petitioner's post-removal-period detention is "mandatory."

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*Id.* § 1231(a)(1)(B). And "[d]uring the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A); *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021).

Later subsections of the same statute permit the Government to extend the removal period, "such that an alien remains detained after 90 days have passed," *Guzman Chavez*, 594 U.S. at 528, under certain circumstances. *See, e.g.*, 8 U.S.C. §§ 1231(a)(1)(C), 1231(a)(6); *see Guzman Chavez*, 594 U.S. at 528-29. One such circumstance is when an alien is removable because he has "failed to maintain a nonimmigrant status in which he was admitted . . . or to comply with the conditions of any such status." 8 U.S.C. § 1227(a)(1)(C)(i).

Because DHS issued a final administrative removal order to remove Petitioner to Israel, the Government maintains that his detention is governed by § 1231(a). *See supra* note 1; Doc. [1-2] at 25. Petitioner does not "contest the removal order or [seek] relief from removal." Doc. [13] at 3. He admits that he "entered the US under the Visa Waiver Program (VWP) and violated his status in that he remained beyond the 90 days accorded to him upon entry." *Id.* at 1. And although he is careful not to concede that there *is* statutory authority for his post-removal-period detention, he does not argue that there is not. *See id.* at 5 ("Because the removal period has expired, any current custody authority arises, *if at all*, under § 1231(a)(6).") (emphasis added). In fact, he repeatedly assumes the applicability of § 1231(a) throughout his reply. *See id.* at 9 ("The governing text is § 1231(a)(6) . . . ."); *id.* (question is "whether § 1231(a)(2) requires the continued detention, without any individualized review of a VWP entrant who has pending asylum and marriage-based adjustment applications"). Based on the statutory text and the undisputed record, the Court accepts the parties' representation that Petitioner is being detained after the end of his removal period by operation of § 1231(a)(6).[3]

---

[3] The Government acknowledges that some courts in other jurisdictions have held that 8 U.S.C. § 1226(a) applies if an asylum application is pending after execution of a final order of removal. *See* Doc. [10] at 10 n.7; *see, e.g.*, *Simayi v. Dep't of Homeland Sec.*, 2026 WL 1909993, at *5 (E.D. Va. July 2, 2026); *Padilla-Ramirez v. Bible*, 882 F.3d 826, 835 (9th Cir. 2017); *Kammerer v. Vergara*, 838 F. Supp. 3d 665, 668-69 (W.D. Tex. 2026) (collecting cases). Because Petitioner cites no such authority and does not argue that the Court should apply § 1226(a), the Court does not address that argument. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). For the same reason, the Court does not consider "Claim Three" of the Petition, which purports

The United States Supreme Court has rejected the argument that § 1231(a)(6)'s statutory text requires the Government to provide individualized bond hearings before immigration judges after six months of detention. *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 580 (2022). Petitioner therefore has no statutory right to such a hearing.

**II. <u>The Due Process Clause does not entitle Petitioner to a bond hearing.</u>**

Nevertheless, Petitioner argues that the Due Process Clause of the Fifth Amendment to the United States Constitution entitles him to an individualized bond hearing. *See* Doc. [13] at 4-5; *id.* at 8. That argument is also foreclosed by Supreme Court precedent.

Petitioner is correct that his "VWP entry does not extinguish his Fifth Amendment liberty interest." *Id.* at 7. He is also correct that the Supreme Court applied the Fifth Amendment Due Process Clause in the context of post-removal-period detention 25 years ago in *Zadvydas v. Davis*, 533 U.S. 678 (2001). But Petitioner misunderstands *Zadvydas*'s holding. It does not stand for the broad proposition—otherwise unsupported in Petitioner's briefing—that "[w]here the statute permits release, categorical detention with any individualized inquiry is excessive unless DHS can show that custody is necessary in the particular case." Doc. [13] at 8. Rather, *Zadvydas* prescribes a specific procedure for courts considering constitutional challenges to post-removal-period detention under § 1231.

According to *Zadvydas*, "read in light of the Constitution's demands, [§ 1231] limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States," 533 U.S. at 689; *see also Demore v. Kim*, 538 U.S. 510, 527 (2003). "[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. at 699-70. In administering that principle, the *Zadvydas* Court advised, lower courts should consider up to six months of detention under § 1231(a) to be "presumptively reasonable." *Id.* at 701. If, after six months, "the alien provides good reason to believe that there is no significant likelihood of removal in the

---

to seek habeas relief based on "a failure to consider changed circumstances as part of his 2 prior parole requests such as his credible fear interview and his application for adjustment of status as the spouse of a US Citizen." Doc. [1] at 5. Although the Government addresses that claim in its response to the Petition, Doc. [10] at 3 n.3, Petitioner neglects to address the Government's argument or otherwise support the claim in reply, leaving the Court with no idea what legal basis he believes there might be for it. The Court thus deems "Claim Three" abandoned.

reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

The Fifth Amendment Due Process Clause was the explicit basis for *Zadvydas*'s "implicit 'reasonable time' limitation." *Zadvydas*, 533 U.S. at 682, 690. Accordingly, subsequent courts have interpreted *Zadvydas* as setting the standard for due process in the context of post-removal-period detention under § 1231. *See, e.g.*, *Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024) ("[T]he *Zadvydas* standard *is* due process: a § 1231 detainee who fails the *Zadvydas* test fails to prove a due process violation."); *Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003) ("[W]e may safely assume that [the *Zadvydas* "reasonable foreseeability"] test articulates the outer bounds of the Government's ability to detain aliens . . . without jeopardizing their due process rights."). Petitioner provides no legal basis for applying any other standard for due process in his case, and the Court is aware of none.[4]

Applying *Zadvydas* to Petitioner's case, then: When the Petition was filed, Petitioner had not yet been detained for six months, and his detention had thus far been presumptively reasonable under *Zadvydas*. *Zadvydas*, 533 U.S. at 701. At present, Petitioner has been detained for six months and seventeen days. Thus, if he "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," then the Court must require the Government to "respond with evidence sufficient to rebut that showing." *Id.* But Petitioner has not made such a showing.

"What matters, the Supreme Court teaches, is that [Petitioner's] detention "has 'a definite termination point': the conclusion of [the asylum] proceedings." *Castaneda*, 95 F.4th at 758-59 (quoting *Martinez v. Larose*, 968 F.3d 555 (6th Cir. 2020)). If Petitioner is denied asylum, there is no other bar to his removal.[5] He "has the keys in his pocket" and can "end[] his detention

---

[4] After citing only *Zadvydas* in support of his due process argument, Doc. [13] at 7-8, Petitioner spends the rest of his reply arguing that the Court should not deny him relief based on other authorities. *See* Doc. [13] at 8-11 (trying to distinguish this case from, *inter alia*, *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024); *Demore v. Kim*, 538 U.S. 510 (2003); and *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026)). The Court believes its reasoning is consistent with those authorities, but it does not rely on any of them in denying the Petition, because that result is dictated by *Zadvydas*. The Court declines to wade into the parties' disputes about the scope of *Banyee*, *Demore*, and *Avila*.

[5] Although Petitioner and his spouse have made other filings relating to his immigration status, he does not argue that any of those would prevent his removal, absent the asylum claim. And as part of the Visa Waiver Program, he waived the right to contest "any action for removal" "other than on the basis of an application for asylum." 8 U.S.C. § 1187(b)(2).

immediately" by withdrawing his asylum application and returning to Israel. *Banyee*, *v. Garland*, 115 F.4th 928, 933 (8th Cir. 2024) (quoting *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999)); *see also Lin v. Warden of Mahoning Cnty. Jail*, 2026 WL 1827465, at *4 (N.D. Ohio June 24, 2026) ("Absent any evidence that her asylum proceedings are being improperly dragged out by DHS, this delay in removal (and subsequent continued detention) is a situation of Petitioner's own making."). "The absence of a date certain—imminent or not—for the conclusion of [the asylum] proceedings is of no moment." *Castaneda*, 95 F.4th at 758. Neither is the fact that the Government has not acted as quickly as Petitioner would like it to. *See Banyee*, 115 F.4th at 932 (length of detention does not determine its legality).

Petitioner presents no evidence that the ongoing proceedings are a "ruse 'to incarcerate [him] for other reasons,'" or that there have been "dilatory tactics" by either side. *Banyee*, 115 F.4th at 934 (quoting *Demore*, 538 U.S. at 533 (Kennedy, J., concurring)). In fact, Petitioner admits that the Government has taken action on his asylum case. *See* Doc. [13] at 8 (noting a hearing set for September 18, 2026). Because Petitioner has made no showing that he is "stuck in [the] 'removable-but-unremovable limbo' that triggered the due process concerns in *Zadvydas*," his continued post-removal-period detention under 8 U.S.C. § 1231(a)(6) does not offend the Due Process Clause. *Castaneda*, 95 F.4th at 759 (quoting *Martinez v. Larose*, 968 F.3d 555, 565 (6th Cir. 2020)).[6]

## CONCLUSION

Because Petitioner has not shown that he is entitled to habeas relief on statutory or constitutional grounds,

---

[6] The Court's reasoning is consistent with that of the Fourth, Sixth, and Tenth Circuits on detention under § 1231 while asylum or withholding-from-removal proceedings are ongoing. *Castaneda*, 95 F.4th at 757-58 (even lengthy withholding-only proceedings do not present the same risk of 'indefinite and potentially permanent' detention at issue in *Zadvydas*); *Soberanes v. Comfort*, 388 F.3d 1305, 1311 (10th Cir. 2004) (two-year detention valid under *Zadvydas* because it was "directly associated with a judicial review process" with a "definite and evidently impending termination point"); *Martinez v. Larose*, 968 F.3d 555, 565 (6th Cir. 2020) (removal still reasonably foreseeable despite two year detention pending withholding-only proceedings; if detention continues after withholding-only relief is denied, Petitioner may "refile" his habeas petition and "argue at that point that there is no significant likelihood of removal in the reasonably foreseeable future"); *see also, e.g.*, *Lin*, 2026 WL 1827465, at *4 (detention of VWP violator that exceeded 90-day removal period presumptively reasonable while asylum application was pending). *But see Cabrera Galdamez v. Mayorkas*, 2023 WL 1777310, at *4 (S.D.N.Y. Feb. 6, 2023) (prolonged detention under § 1231(a)(6) without a bond hearing violates due process); *W.A.C. v. Rokosky*, 836 F. Supp. 3d 577, 584 (D.N.J. 2026) ("prolonged detention under § 1231(a)(6), without meaningful individualized review, raises serious constitutional concerns.").

**IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241, Doc. [1], is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**.

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue because Petitioner has failed to make a substantial showing that he has been denied a constitutional right.

**IT IS FINALLY ORDERED** that Petitioner's Motion to Expedite, Doc. [14], is **DENIED AS MOOT**.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 13th day of November, 2026.

SARAH E. PITLYK
UNITED STATES DISTRICT COURT